UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KEVIN J. LISLE, | 3:10-cv-00064-LRH-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| E.K. MCDANIEL, *et al.*, | |
| Defendants. | July 5, 2012 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#95).[1] Plaintiff opposed (#116) and defendants replied (#118). The court has reviewed the record and motions and recommends that defendants' motion (#95) be denied in part and granted in part.

### I.  HISTORY & PROCEDURAL BACKGROUND

Plaintiff Kevin J. Lisle ("plaintiff"), a *pro se* inmate, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#9). Plaintiff brings his first amended complaint pursuant to 42 U.S.C. § 1983, alleging violations under the Eighth and Fourteenth Amendments. *Id*. Pursuant to 28 U.S.C. § 1915A, the court screened the complaint and allowed the following claims to proceed: (1) due process claim based on plaintiff's continued high risk potential ("HRP") classification and plaintiff's indeterminate confinement in the Condemned Men's Unit ("CMU") against defendants McDaniel, Neven, Donat, Zoetta Waggener, Hebert, Drain, Endel, Kerr, Seaton, Brooks, Baker, Peltzer, Cox, Chambliss, Darren Waggener, Remington, and Oxborrow; and (2) excessive force claim against defendant, Darren Waggener (#14).

---

[1] Refers to the court's docket numbers. Defendants also filed documents under seal (#97, Exs. B, D, G (*sealed*)).

### I. Due Process Claim

In his amended complaint, plaintiff alleges that he was denied due process because he has been classified as HRP and housed in the CMU since 1996 (#9, p. 9). Plaintiff claims that he is in "solitary confinement," and he has many more restrictions placed on him than the general prison population. *Id.* at 10-14. Plaintiff further claims that he has not been afforded fair hearings and that prison officials have relied on faulty information regarding his continued HRP classification and CMU housing. *Id.* at 13-15.

Plaintiff has been housed on death row which is officially referred to as the Condemned Mens' Unit at ESP since 1996. Plaintiff was placed on HRP status from 1996 through April 17, 2001. In June 2002, plaintiff was again placed on HRP status and placed in segregation (#97, Ex. D, p. 0002 (*sealed*)). NDOC has provided plaintiff with numerous classification hearings since June 2002 (#95, Ex. F).

### II. Excessive Force Claim

Plaintiff further alleges that on July 16, 2008, defendant Darren Waggener denied his medical need for "big boy" shackles. *Id.* at 26. Plaintiff claims that defendant Waggener slammed him on the ground when plaintiff asked him why he disregarded a medical order regarding the use of certain shackles. *Id.* at 26-27. Both defendants and plaintiff state that plaintiff was taken to the ground when he refused to return to his cell (#95, p. 13; #116, Ex. 23). According to investigation detail reports of the incident, plaintiff refused to comply with orders, and defendant Waggener and other officers forced plaintiff onto the ground (#97, Ex. G, pp. 0001-0004 (*sealed*)).

Defendants move for summary judgment on all claims in plaintiff's amended complaint (#95). Defendants move to dismiss plaintiff's due process claim based on housing in the CMU for a failure to exhaust and based on the applicable two-year statute of limitations. *Id.* at 2. Defendants move to dismiss plaintiff's due process claim related to his HRP status based on the statute of limitations. *Id.* Defendants also move for summary judgment on plaintiff's due process claims and argue that plaintiff fails to produce any evidence to support a claim that he is improperly classified as HRP status and improperly housed in the CMU. *Id.* Defendants move to dismiss plaintiff's excessive force claim based on the two-year statute of limitations. *Id.* Defendants also move for

1  summary judgment on plaintiff's excessive force claim. *Id*.

2  Plaintiff opposes and largely restates the allegations in his complaint (#116). Plaintiff
3  discusses his placement on HRP status since 2002 and his claim of excessive force against defendant
4  Waggener. *Id*. at 1-2.[2] Plaintiff claims that his HRP status constitutes a continuing violation
5  pursuant to the continuing violation theory. *Id*. at 4. Plaintiff contends that he did not receive
6  sufficient due process prior to being placed on HRP status. *Id*. at 5. Plaintiff states that in 2010, he
7  discovered that the notice of charges against him which led to his current HRP status had been
8  falsified. *Id.* Plaintiff lists nine grievances in which he grieved his HRP status. *Id*. at 6. As to his
9  excessive force claim, plaintiff states that he completed the grievance process and that the statute of
10 limitations tolled while he exhausted his administrative remedies. *Id*. at 5. Plaintiff attaches
11 grievance 2006-27-51388 in which he grieved an incident which took place on July 16, 2008. *Id*.
12 at Ex. 23. Plaintiff disputes whether ESP's policy regarding HRP status is sufficiently adequate.
13 *Id*. at 10.[3] Plaintiff claims he did not receive notice and an opportunity to respond regarding his
14 classification reviews. *Id.* at 19.[4] Plaintiff attaches medical kites, a request to review his I-file, the
15 CMU policy, grievances, his affidavits, and answers to interrogatories.

16 Defendants reply that plaintiff fails to provide any compelling evidence or exhibits rebutting
17 their motion (#118, p. 2). They state that plaintiff's claim of an ongoing violation "does not hold
18 water" because he admits he was removed from HRP status in 2001. *Id*. Defendants argue that
19 plaintiff is not on indefinite HRP status because he was taken off HRP status until he attacked
20 another inmate in 2002. *Id.* at 3. Defendants contend that plaintiff's HRP status is reviewed
21 regularly and is not indefinite. *Id*. at 4. Defendants do not respond to plaintiff's statement that he
22 exhausted his administrative remedies as to his excessive force claim.

23 The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff

---

[2] Plaintiff's contention that he was wrongfully convicted of stabbing an inmate in 2002 is not a claim before the court in this lawsuit (#116, p. 20).

[3] Plaintiff discusses Operational Procedure ("OP") 434 which governs policies and procedures regarding an inmate's HRP classification (#116, p. 9). Defendants fail to address this policy.

[4] Plaintiff does not challenge his CMU housing in his opposition.

3

appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.  DISCUSSION & ANALYSIS

**A.    Discussion**

**1.    Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-

4

23.

**B.     Analysis**

    **1.     Fourteenth Amendment Due Process**

Defendants move for summary judgment on plaintiff's claim regarding his placement in CMU housing and argue that plaintiff fails to produce any evidence to support a claim that he is improperly housed in the CMU (#95, p. 10). Defendants also argue that this claim must be dismissed for a failure to exhaust administrative remedies. *Id*. at 8. Defendants argue that plaintiff's claim regarding his HRP status should be dismissed pursuant to the two-year statute of limitations. *Id*. Defendants also claim that plaintiff cannot establish a constitutional violation with regard to his HRP status because he received regular classification hearings. *Id*. at 8-9.

        **a.     Condemned Mens' Unit**

The Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary government action by prohibiting states from depriving people of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. In order to prevail on a claim of deprivation of liberty without due process of law, a plaintiff must first establish the existence of a liberty interest. After meeting this threshold requirement, the plaintiff must then demonstrate that defendants failed to provide the process due. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). Under *Sandin*, a factual comparison must be made between the conditions in general prison population and the challenged condition, "examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). There is no single standard for this comparison; instead, courts examine the "condition or a combination of conditions or factors" case by case. *Kennan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). Specifically, courts consider three factors in undertaking this analysis: (1) whether the challenged sanction "mirrored those conditions imposed upon inmates in administrative segregation and protective custody" demonstrating that the prison acted within its discretionary authority; (2) the duration of the sanction; and (3) whether the sanctions will affect the

1  length of the prisoner's sentence. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

2  Here, plaintiff is housed on death row which is officially referred to as the Condemned Mens'
3  Unit at ESP. Plaintiff must establish the existence of a liberty interest to prove a violation of the
4  Fourteenth Amendment. Under the Constitution, a liberty interest is implicated when the conditions
5  of confinement "[exceed] the sentence in such an unexpected manner as to give rise to protection
6  by the Due Process Clause of its own force." *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996).
7  Liberty interests created by the state are limited to freedom from restraint that "imposes atypical and
8  significant hardship on the inmate in reflation to the ordinary incidents of prison life. *Sandin*, 515
9  U.S. at 484. Plaintiff admits in his complaint that he is a death row inmate (#9, p. 9). The condition
10 of being housed in the CMU is not atypical to other inmates on death row at ESP; therefore, plaintiff
11 does not have a liberty interest. Defendants should be entitled to summary judgment as to plaintiff's
12 due process claim related to his placement in the CMU.[5]

13 **b.   High Risk Potential**

14 Defendants argue that plaintiff's claim regarding his HRP status should be dismissed
15 pursuant to the two-year statute of limitations (#95, p. 8). Defendants claim that because plaintiff
16 was last classified as HRP status on June 6, 2002, he was required to file his complaint within two
17 years of that date. *Id*. While it is correct that plaintiff was most recently classified as HRP status
18 on June 6, 2002, he received classification hearings after that date. *Id*. at Ex. F, pp. 0001-0042.

19 Section 1983 does not provide a statute of limitations. Federal courts apply the forum state's
20 statute of limitations for personal injury claims. *The Comm. Concerning Cmty. Improvement v. City
21 of Modesto*, 583 F.3d 690, 701 n. 4 (9th Cir. 2009). In Nevada, the statute of limitations for personal
22 injury claims is two years. Nev. Rev. Stat. § 11.190(4)(e). On the other hand, federal law
23 determines when a cause of action accrues and the statute of limitations begins to run for a section
24 1983 claim. *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Under federal
25 law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which

---

[5] Because the court recommends that summary judgment be granted on plaintiff's claim regarding his placement in the CMU, the court need not address defendants' arguments that this claim should be dismissed due to a failure to exhaust administrative remedies.

6

1  is the basis of the action. *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Pursuant to the Prison
2  Litigation Reform Act ("PLRA"), inmates must exhaust available administrative remedies before
3  filing section 1983 actions in federal court. *See* 42 U.S.C. § 1997e. While an inmate is completing
4  the mandatory exhaustion process, the applicable statute of limitations is tolled. *See Brown v. Valoff*,
5  422 F.3d 926, 943 (9th Cir. 2005); *see also Wisenbaker v. Farwell*, 341 F.Supp.2d 1160, 1165
6  (D.Nev. 2004).

7        This court held a motions hearing on November 28, 2011, regarding defendants' previous
8  motion to dismiss plaintiff's due process claim based on his HRP status (#36). At the hearing,
9  defendants' counsel, Ms. Lee, withdrew defendants' motion to dismiss (#64). The court permitted
10 defendants to resubmit their motion to dismiss by December 29, 2011, but defendants never did so.
11 During the hearing, the court admonished Ms. Lee with respect to several deficiencies in the motion
12 to dismiss. The court's review of the tape recording from the hearing reveals that defendants'
13 counsel has failed to address the court's concerns in the present motion.

14       At the hearing, the court discussed the need for defendants' counsel to explain the process
15 by which an inmate's HRP status is reviewed in classification hearings and emphasized defendants'
16 burden to prove that plaintiff's claim is barred by the statute of limitations. The court specifically
17 requested information regarding the difference between being "placed" on HRP status and being
18 "classified." Defendants fail to discuss these issues in their present motion and fail to attach the
19 prison regulations governing this process. Defendants' conclusory argument that plaintiff was
20 required to file his lawsuit two years from when he was placed on HRP status in 2002 does not
21 suffice. It appears to the court that because plaintiff received classification hearings, that process
22 is subject to the grievance process and would trigger the statute of limitations. However, defendants
23 cite to no legal authority regarding this issue despite the fact that the court discussed this concern in
24 the 2011 hearing. Defendants' argument that plaintiff was required to file a complaint within two
25 years of his HRP classification in 2002 fails for these reasons.

26       Second, the court emphasized the need to provide the court with copies of *actual* grievances
27 which relate to plaintiff's HRP status, and not solely the NOTIS report. Defendants' counsel has
28 once again failed to do so and attaches plaintiff's NOTIS report to the motion, which is only a

summary of plaintiff's grievances. The record indicates that plaintiff exhausted his HRP classification on several occasions; and defendants' counsel should have provided the court with copies of plaintiff's actual grievances (#95, Ex. C, pp. 0015, 0037, 0048). It is defendants' burden to prove to the court that plaintiff's claim is barred by the statute of limitations. Defendants fail to satisfy their burden when they do not provide the court with copies of actual grievances pertaining to plaintiff's HRP status.[6]

Further, the court told defendants' counsel to address plaintiff's claim that his HRP status is a continuing violation. Defendants state in their reply that there is no continuing violation because plaintiff was removed from HRP status for a short period of time. Defendants do not adequately address whether placement on HRP status since 2002 constitutes a continuing violation and cite no legal authority regarding this issue.[7] Defendants' motion to dismiss based on the statute of limitations should be denied.

Lastly, defendants argue that they are entitled to summary judgment because plaintiff failed to show that his HRP status is a due process violation (#95, p. 8). The parties do not dispute that plaintiff is entitled to due process with respect to his HRP classification. The parties also do not dispute that plaintiff was provided with classification hearings regarding his HRP status. The parties do dispute, however, whether proper due process was accorded with respect to those hearings. Defendants fail to refute plaintiff's factual allegations that he was not accorded proper due process by pointing to evidence that plaintiff was, in fact, accorded proper due process according to prison regulations and by explaining this process to the court. Therefore, the court finds there are genuine issues of material fact as to whether the there was a due process violation. Defendants do not provide the court with any evidence or information about the process which governs the review of

---

[6] The court notes that these grievances are relevant to the inquiry of whether plaintiff's claim is barred by the statute of limitations because the statute of limitations is tolled while an inmate exhausts his administrative remedies. *See Brown*, 422 F.3d at 943; *see also Wisenbaker*, 341 F.Supp.2d at 1165.

[7] The court advised defendants' counsel to provide plaintiff with a copy of *Sells v. McDaniel*, 2007 WL 437729 (D.Nev., 2007). Defendants do not discuss this case in their reply, and it is unclear whether they provided plaintiff with a copy of this case.

8

an inmate's HRP status.[8] The court recommends that defendants' motion for summary judgment as to plaintiff's due process claim related to his HRP status be denied.

**2.     Eighth Amendment Excessive Force**

Defendant Waggener argues that plaintiff's excessive force claim is barred by the two-year statute of limitations (#95, p. 11). The incident of excessive force allegedly took place on July 16, 2008 (#9, p. 26). Thus, defendant argues that plaintiff was required to file his complaint within two years of that date. Plaintiff filed his complaint on August 11, 2010 (#9).

The court's review of plaintiff NOTIS report reveals that he filed a grievance on July 18, 2008, regarding the incident that took place on July 16, 2008 (#95, Ex. C, p. 0027). In grievance 2006-27-51388, plaintiff alleged that defendant Waggener escorted plaintiff to the shower and refused to provide plaintiff with "big boy leg shackles," in violation of proper medical procedures. *Id.* It is unclear whether these factual allegations were sufficient to put defendant on notice of the excessive force claim because defendant did not provide the court with a copy of the actual grievance. Defendant Waggener fails to address this grievance altogether.

Plaintiff exhausted grievance 2006-27-51388 on September 12, 2008, and would have had two years from that date to file his complaint. The court notes that plaintiff attaches grievance 2006-27-51388 to his opposition, which reveals that he did in fact grieve being "slammed" to the ground (#116, Ex. 23).[9] Because defendant fails to discuss this grievance and to provide the court with a copy of the actual grievance, defendant's motion to dismiss this claim based on the statute of limitations should be denied.

Defendant also argues that he is entitled to summary judgment on plaintiff's claim of excessive force because plaintiff cannot establish that the defendants used excessive force in violation of the Eighth Amendment (#95, p. 13). Defendant attaches his affidavit and the investigation detail reports of several witnesses (#95, affidavit #1; #97, Ex. G (*sealed*)). Plaintiff

---

[8]     In response to interrogatories, defendants Chambliss and Cox stated that ESP Operational Procedure 434 governs the placement and retention of HRP status (#116).

[9]     Plaintiff's attachment of his actual grievance confirms that the NOTIS report is insufficient to adequately determine whether plaintiff grieved a claim.

9

1   attaches his affidavit regarding the incident (#116, Ex. 23).

2   Where an inmate claims a violation of his Eighth Amendment right to be free from cruel and unusual punishment based on use of excessive force, the proper inquiry is whether the force resulted in the unnecessary and wanton infliction of pain or suffering. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To determine whether the force used was wanton and unnecessary "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. In making this determination, the court considers the following factors: (1) the extent of the injury suffered by the inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Moreover, there is no need for a showing of a serious injury as a result of the force, but the lack of such an inquiry is relevant to the inquiry. *Id.* at 7-9; *see also Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). The court must give deference to the prison officials when reviewing use of force and cannot substitute its own judgment for the judgment of prison officials. *Whitley*, 475 U.S. at 322. Unless the evidence supports a reliable inference of wantonness, the case should not go to the jury. *Id.*

For summary judgment purposes, the court accepts the non-moving party's version of the incident as true and determines whether the moving party is, nevertheless, entitled to judgment as a matter of law. Further, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1905), *cert. denied*, 516 U.S. 1171 (1996).

In his complaint and opposition, plaintiff states that defendant Waggener denied plaintiff's need for "big boy" leg shackles and slammed plaintiff on the ground when plaintiff asked him why he disregarded a medical order regarding the use of certain shackles (#9, pp. 26-27; #116, p. 2).

Defendant Waggener attests to the fact that he ordered plaintiff "not to turn towards [him]" in an aggressive fashion, and plaintiff became agitated and continued turning towards defendant (#95, affidavit #1, p. 2). Defendant Waggener states in his affidavit that plaintiff refused to comply

10

1  with orders to return to his cell and sat down on the floor of the tier. *Id*. Defendant Waggener
2  assisted in rolling plaintiff from the sitting position onto his stomach and held plaintiff's legs down
3  with his right hand to prevent him from trying to kick staff. *Id*. Defendant also provides the court
4  with investigation detail reports completed by five witnesses and other officers involved in the
5  incident confirming the facts stated in defendant's affidavit (#97, Ex. G (*sealed*)). The evidence
6  defendant has provided satisfies his initial burden on summary judgment.

7  Plaintiff states in his affidavit that defendant Waggener "slammed [plaintiff] to the ground
8  in full restraints" (#116, Ex. 23). Plaintiff concedes in his affidavit that he refused to comply with
9  officers' orders to return to his cell. *Id*. Plaintiff and defendant's statements of what happened is
10 not materially different. Even with the evidence plaintiff provides, plaintiff has not set forth specific
11 facts sufficient to raise a genuine issue for trial as to whether the alleged force was carried out
12 "maliciously and sadistically" rather than as part of a "good faith effort to maintain or restore
13 discipline." *Hudson*, 503 U.S. at 7. Plaintiff has provided no evidence to contradict the account
14 given in the investigation reports. The court analyzes the *Hudson* factors.

15 First, the court looks to the extent of plaintiff's injury. Here, plaintiff alleges no injury from
16 being taken down to the ground and restrained. The investigation detail reports reveal that plaintiff
17 suffered no injuries (#97, Ex. G (*sealed*)).[10] Second, the court finds that there was need for
18 application of force. Defendant Waggener states in his affidavit that plaintiff refused to comply with
19 orders to not "turn towards" defendant in an aggressive fashion and to return to his cell. Each of the
20 witnesses also reported that plaintiff refused to cooperate with offer Waggener and turned his upper
21 body towards defendant in a threatening manner. *Id*. Plaintiff admits in his declaration that despite
22 orders to return to his cell, he insisted on having a shower and refused to comply with defendant.
23 Third, there is a reasonable relationship between the need for force and the amount of force used.
24 The amount of force used, forcing plaintiff to the ground, was necessary to maintain control of
25 plaintiff. Fourth, because of plaintiff's refusal to comply with orders, and his threatening behavior,

---

[10] Plaintiff alleges injury from the shackles placed on his ankles; however, his claim of excessive force is based on his allegation of being slammed to the ground (#14, p. 5).

11

1  defendant Waggener reasonably perceived plaintiff to be a threat. Finally, defendant Waggener
2  attempted to temper the severity of a forceful response by first ordering plaintiff to return to his cell.
3        The analysis of the factors above point to defendant Waggener's necessity to employ force,
4  and nothing evidences any maliciousness or intent to cause harm on defendant Waggener's part.
5        Furthermore, the court underscores its obligation to give deference to prison officials when
6  reviewing use of force and not to substitute its own judgment for the judgment of prison officials.
7  *See Beard*, 548 U.S. at 530. Unless the evidence supports a reliable inference of wantonness, the
8  case should not go to the jury. Based on the *Hudson* factors, the evidence does not support a reliable
9  inference that defendant used excessive force during the incident on July 16, 2008. As the Supreme
10 Court has noted, the prisoner must point to sufficient evidence to demonstrate that he can prevail on
11 the merits. *Id.* Plaintiff's showing here does not supply a reliable inference and thus falls short of
12 what is needed to overcome summary judgment. Therefore, summary judgment should be granted
13 as to plaintiff's claim of excessive force against defendant Waggener.

14       **3.    Eleventh Amendment Immunity**

15       Defendants argue that plaintiff's claims against defendants in their official capacities should
16 be dismissed (#95, p. 14). Plaintiff brings claims against defendants in their official and individual
17 capacities (#9, p. 2-3; #22).
18       The Eleventh Amendment states: "The Judicial power of the United States shall not be
19 construed to extend to any suit in law or equity . . . against one of the United States by Citizens of
20 another State . . . ." U.S. Const. amend XI. The Supreme Court has held that a suit against a state
21 official in his or her official capacity is not suit against that official, but rather a suit against the
22 official's office; therefore, an official acting in his or her official capacity is not a "person" under
23 section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Because the state and its
24 officials are not considered "persons" within the meaning of section 1983, "they cannot be held
25 liable under the statute for money damages." *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918
26 (9th Cir. 2003). Therefore, plaintiff's claims against defendants in their official capacities should
27 be dismissed with prejudice.
28

12

1 **4.     Qualified Immunity**

2        Defendants argue they are entitled to qualified immunity (#95, p. 15). Defendants state that
3 they could not have known that placement in the CMU would violate plaintiff's constitutional rights
4 because he is a condemned man on death row. *Id*. at 16.  They also argue that they could not
5 reasonably know that classifying plaintiff as HRP would violate his rights because they provided
6 plaintiff with a review hearing every six months. *Id.*

7        "The doctrine of qualified immunity protects government officials from liability for civil
8 damages insofar as their conduct does not violate clearly established statutory or constitutional rights
9 of which a reasonable person would have known." *Clouthier v. County of Contra Costa*, 591 F.3d
10 1232, 1240 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73
11 L.Ed. 2d 396 (1982)).  "In considering a claim of qualified immunity, the court must determine
12 'whether the facts that plaintiff has alleged . . . make out a violation of a constitutional right,' and
13 'whether the right at issue was clearly established at the time of the defendant's alleged
14 misconduct.'" *Id.*  (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009)).
15 Whether a right is clearly established turns on the "objective legal reasonableness of the action,
16 assessed in light of the legal rules that were clearly established at the time it was taken." *Id.*  "[A]ll
17 but the plainly incompetent or those who knowingly violate the law have immunity from suit;
18 officers can have a reasonable, but mistaken, belief about the facts or about what the law requires
19 in any given situation." *Id.*

20        When analyzing a claim of qualified immunity, the court must view the facts in the light
21 most favorable to plaintiff.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  As the court previously
22 discussed, defendants fail to provide the court with evidence and information regarding the proper
23 procedure for reviewing an inmate's HRP status.  Defendants also failed to address the deficiencies
24 discussed in the court's 2011 hearing regarding plaintiff's continued HRP status.  The court notes
25 that the law pertaining to due process requirements in relation to an inmate's indefinite continuation
26 of HRP status was clearly established at the time. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th
27 Cir. 1996), *as amended by* 135 F.3d 1318 (9th Cir. 1998); *see also Wilkinson v. Austin*, 545 U.S.
28 209, 224, 126 S.Ct. 2384 (2205) (finding a liberty interest in an indefinite term of restricted

13

confinement with annual reviews).[11]  For the foregoing reasons, defendants are not entitled to qualified immunity on plaintiff's due process claim regarding his HRP status.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants' motion for summary judgment as to plaintiff's due process claim related to his HRP status be **DENIED**.  The court recommends that defendants' motion for summary judgment as to plaintiff's due process claim related to his CMU housing and his excessive force claim against defendant Waggener be **GRANTED**.  Further, all claims against defendants in their official capacities should be **DISMISSED with prejudice**.  Defendants' motion for summary judgment based on qualified immunity is **DENIED**.  The parties are advised:

1. Pursuant to 28 U.S.C.  § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#95) be **GRANTED** in part and **DENIED** in part as follows:

(1) defendants' motion for summary judgment on plaintiff's due process claim related to his housing in the CMU should be **GRANTED**;

(2) defendants' motion for summary judgment on plaintiff's due process claim related to his HRP status should be **DENIED**; and

(3) defendants' motion for summary judgment on plaintiff's excessive force claim against

---

[11] Because the court recommends that summary judgment be granted as to plaintiff's claims related to his CMU housing and excessive force, the court need not discuss qualified immunity as to those claims.

14

defendant Waggener should be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that all claims against defendants in their official capacities be **DISMISSED with prejudice**.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment based on qualified immunity be **DENIED**.

**DATED**: July 5, 2012.

*Valerie P. Cooke*

_____
**UNITED STATES MAGISTRATE JUDGE**