UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KEVIN J. LISLE, ) | |
| ) | 3:10-cv-00064-LRH-VPC |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| E.K. MCDANIEL, *et al.*, ) | |
| ) | |
| Defendants. ) | June 11, 2013 |
| ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' supplementary motion for summary judgment (#127).[1] Plaintiff opposed (#129) and defendants replied (#130). The court has thoroughly reviewed the record, and recommends that defendants' supplementary motion for summary judgment (#127) be granted.

**I.  HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Kevin J. Lisle ("plaintiff"), a *pro se* inmate, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#9). Plaintiff brings his first amended civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials violated his First, Eighth and Fourteenth Amendment rights. *Id.* The court screened the complaint pursuant to 28 U.S.C. § 1915A, and allowed the following claims to proceed: (1) Eighth Amendment excessive force claim against defendant Darren Waggener; and (2) Fourteenth

---

[1] Refers to the court's docket numbers.

-1-

Amendment due process claims against defendants McDaniel, Neven, Donat, Zoe Waggener, Hebert, Drain, Endel, Kerr, Seaton, Brooks, Baker, Peltzer, Cox, Chambliss, Darren Waggener, Remington and Oxborrow (#14, p. 9).[2]  On July 5, 2012, this court recommended that defendants' motion for summary judgment (#95) be granted as to plaintiff's Eighth Amendment excessive force claim and plaintiff's Fourteenth Amendment due process claim related to his incarceration in the Condemned Men's Unit ("CMU") (#119, pp. 14-15).[3]  However, this court recommended that defendants' motion for summary judgment be denied as to plaintiff's Fourteenth Amendment due process claim related to his High Risk Potential ("HRP") classification.[4]  *Id*.  On November 30, 2012, the district judge adopted this court's recommendation, and granted defendants leave to file a supplementary motion for summary judgment on plaintiff's Fourteenth Amendment due process claim related to his HRP classification (#126, p. 3).

In his first amended complaint, plaintiff alleges that he was denied due process because he has been classified as an HRP inmate since 1996 (#9, pp. 9-10).  Plaintiff claims that he is in "solitary confinement," and he has many more restrictions placed on him than other inmates in the general CMU population.  *Id.* at 10-14.  Plaintiff further claims that he has not been afforded fair hearings and that prison officials have relied on faulty information when reviewing his HRP status.  *Id.* at 13-24.

---

[2] On June 1, 2011, the court noted that the screening order incorrectly identified Russell Hebert and Rick Remington as defendants in this action (#44).

[3] This court also recommended that all claims against defendants in their official capacities be dismissed (#119, p. 15).

[4] The court denied this aspect of defendants' motion because: (1) defendants failed to provide the court with evidence explaining the process by which an inmate's HRP classification is reviewed (such as the applicable prison regulations governing HRP classification); (2) defendants failed to provide the court with copies of plaintiff's actual grievances related to his HRP status; (3) defendants did not discuss whether plaintiff's HRP classification constitutes a continuing violation; and (4) defendants failed to refute plaintiff's factual allegations with evidence that plaintiff was, in fact, accorded proper due process (#119, pp. 7-8).

A.   HRP Classification

Plaintiff is currently housed in ESP's CMU (death row) where he is classified as an HRP inmate (#127, Ex. I, ¶ 4).  The purpose of HRP classification is to place correctional staff on notice that a particular inmate may be more dangerous than the average inmate, so that correctional staff can take appropriate measures to mitigate the risk.  *Id.* at ¶ 5.  Such measures include transport by at least two Correctional Emergency Response Team ("CERT") members or three custody officers, extra care in delivering items through the food tray slot, and extra care when entering the inmate's cell (#127, Ex. K, 013, 011).

HRP classification is governed by ESP Operational Procedure ("OP") 434 and OP 501 (#127, Ex. F, ¶ 15).  OP 434 states that when a potential high risk inmate is transferred to ESP, the warden or associate warden will submit the inmate to the full classification committee ("FCC") for review (#127, Ex. I, ¶ 6; #127, Ex. G, p. 001).[5]  In making its classification decision, the FCC will consider such factors as whether the inmate has engaged in assaultive behavior towards correctional staff or other inmates; whether the inmate has escaped or attempted to escape in the past; whether the inmate has been sentenced to death; and whether the inmate requires any special security concerns (#127, Ex. I, ¶ 7; #127, Ex. G, p. 001).  If the FCC determines that the inmate should be classified as an HRP inmate, the warden will generate a memorandum to inform correctional staff of the classification, and will post a sign on that inmate's cell door to alert staff of the designation (#127, Ex. I, ¶ 7; #127, Ex. G, pp. 002, 007, 012).

The FCC reviews the inmate's HRP classification bi-annually.  However, the inmate may request review at any time (#127, Ex. I, ¶ 8; #127, Ex. G, pp. 002, 007, 012).  OP 434 states that at

---

[5] The FCC consists of the Warden and/or Associate Warden of Operations and/or Associate Warden of Programs and/or Correctional Casework Specialist III, the inmate's unit caseworker and the inmate's unit housing sergeant (#127, Ex. H, pp. 002, 011).

-3-

least forty-eight hours before an FCC review hearing, the inmate's caseworker will provide the inmate with written notice of the hearing (#127, Ex. G, pp. 001, 006, 011). However, in practice, it appears that ESP only provides written notice prior to the inmate's initial classification hearing (#127, Ex. I, ¶ 9). For subsequent review hearings, the inmate's caseworker provides the inmate with oral notice of the hearing at least forty-eight hours in advance. *Id.* A memo is also posted in the unit bubble informing the inmate when his HRP status will be considered.[6] *Id.*

The inmate's HRP classification may be removed if the FCC believes that the inmate is no longer a significant security risk. *Id.* at ¶ 10. OP 501 lists the basic eligibility criteria for removing an inmate from HRP classification. To be removed, the inmate must remain disciplinary-free for at least one year; present and maintain a positive attitude; participate in available correspondence courses; demonstrate a cooperative attitude with unit staff; acknowledge responsibility for the behavior that resulted in his HRP classification; and request removal in writing (#127, Ex. I, ¶ 11; #127, Ex. H, pp. 007, 016). If the FCC recommends removal, the warden will schedule another FCC review hearing and will chair that committee (#127, Ex. I, ¶ 12; #127, Ex. G, pp. 002, 007, 012). An NDOC Deputy Director will then review the FCC's decision, and the inmate will receive written notice of the final decision (#127, Ex. I, ¶ 13; #127, Ex. G, pp. 002, 007, 012).[7] The inmate may challenge the classification decision through the grievance process (#127, Ex. I, ¶ 13; #127, Ex. H, pp. 008, 017). *Id.*

B.  Plaintiff's HRP Classification History

Plaintiff arrived at ESP on May 9, 1996, and was classified as an HRP inmate due to the severity of his crime, his identification as a high profile gang leader, and his behavior while housed

---

[6] The court notes that the disparity between OP 434's written notice requirements and ESP's apparent practice is not germane to this case, as plaintiff has not alleged that defendants failed to provide him with notice of any of his FCC review hearings.

[7] Until OP 434 was revised, effective December 15, 2009, the warden was the only person authorized to remove an inmate's HRP designation (#127, Ex. G, pp. 002, 007).

at Clark County Detention Center ("CCDC") (#127, Ex. F, ¶ 8).  Thereafter, plaintiff met with the FCC to review his HRP classification eight times: January 16, 1997, May 15, 1997, November 13, 1997, June 11, 1998, December 10, 1998, June 10, 1999, September 16, 1999 and March 2, 2000. *Id.* at ¶ 9.  Each time, the FCC recommended that plaintiff remain classified as an HRP inmate.  *Id.* On March 22, 2001, plaintiff submitted an Inmate Interview Request form asking the FCC to remove his HRP status (#127, Ex. N).  On April 12, 2001, plaintiff met with the FCC to review his HRP classification, and this time the committee recommended that plaintiff's HRP status be removed (#127, Ex. M).  On April 17, 2001, Associate Warden of Programs Adam Endel approved the FCC's recommendation (#127, Ex. F, ¶ 10; #127, Ex. O).  On May 23, 2002, the FCC granted plaintiff's request to receive CMU yard and tier privileges (#127, Ex. F, ¶ 11).  On June 1, 2002, plaintiff assaulted another inmate with a weapon (#127, Ex. F, ¶ 12; #127, Ex. E, p. 001).[8]  On June 6, 2002, plaintiff met with the FCC, and the committee re-classified plaintiff as an HRP inmate (#127, Ex. F, ¶ 13).

Plaintiff met with the FCC for subsequent classification reviews eleven times: November 1, 2004, November 18, 2005, May 19, 2006, December 1, 2006, July 27, 2007, March 17, 2008, December 12, 2008, May 19, 2010, July 8, 2011, January 25, 2012 and August 7, 2012.  *Id.* at ¶ 14. At each hearing, the FCC recommended that plaintiff remain classified as an HRP inmate.  *Id.*  The FCC observed that at several of plaintiff's review hearings, his behavior was erratic and aggressive, he continually minimized his role in assaulting the other inmate, and he often refused to take responsibility for his behavior—which are some of the reasons the FCC has not recommended that plaintiff be removed from HRP classification again.  *Id.* at ¶ 17.  The FCC informed plaintiff that he

---

[8] The weapon appeared to be made of bent pieces of metal taken off a set of headphones (#127, Ex. E, p. 001).

-5-

must remain disciplinary-free for at least one year before the FCC would consider removing plaintiff's HRP classification. *Id.* at ¶ 16.

Defendants move for summary judgment on the grounds that plaintiff's due process claim related to his HRP classification is barred by the statute of limitations (#127, pp. 6-11); and even if plaintiff's due process claim is not barred, defendants did not violate plaintiff's due process rights. *Id.* at 11-17. Defendants attach several documents to support their motion for summary judgment:[9]

1. plaintiff's Case Note Printout Report (#127, Ex. A);[10]
2. plaintiff's Administrative Segregation Classification Results Notice forms from November 1, 2007, through October 29, 2010 (#127, Ex. B);[11]
3. plaintiff's August 4, 2008, notice of charges and preliminary hearing summary (Disciplinary Forms I and II) for Offense in Custody ("OIC") No. 210824 (#127, Ex. C, pp. 001-004);[12]
4. plaintiff's September 23, 2010, notice of charges, preliminary hearing summary and disciplinary hearing summary (Disciplinary Forms I, II and III) for OIC No. 314669 (#127, Ex. C, pp. 005-009);[13]
5. plaintiff's Disciplinary History Report (#127, Ex. D);[14]
6. plaintiff's June 1, 2002, notice of charges, preliminary hearing summary and disciplinary hearing summary (Disciplinary Forms I, II and III) for his assault on another inmate (#127, Ex. E, pp. 001-003, 007-011);[15]
7. plaintiff's June 1, 2002, Notice of Classification Hearing form (#127, Ex. E, pp. 005-006);[16]
8. the declaration of Harold M. Byrne (#127, Ex. F);
9. ESP OP 434 governing HRP Inmates, effective October 28, 2010, and superseded versions dated December 15, 2009 and September 15, 2007 (#127, Ex. G);[17]
10. ESP OP 501 governing Duties of Institutional Classification Committees, effective March 1, 2010, and a superseded version dated March 1, 2008 (#127, Ex. H);[18]

---

[9] The court admonishes defendants' counsel that the purpose of attaching documentary evidence to a motion for summary judgment is to draw the court's attention to the particular evidence supporting the specific arguments made in the motion. A general citation to an entire exhibit (or multiple entire exhibits) does not facilitate this goal. For example, on page two of defendants' supplementary motion for summary judgment (#127, p. 2), defense counsel states: "During his time in the NDOC, corrections officials found Plaintiff guilty of multiple disciplinary infractions including threats and possession of a shank. *Id.*" The *id.* at the end of this sentence refers to exhibit A, exhibit B, exhibit C, exhibit D and exhibit E—with no pinpoint citation for any of these exhibits. This is not proper practice, and it is not helpful to ask the court to comb through fifty-three pages of documents to verify that plaintiff was found guilty of possession of a shank. In the future, the court directs defendants' counsel to carefully cite all factual information using pinpoint citations.
[10] Authenticated by the declaration of Harold M. Byrne (#127, Ex. F, ¶ 22).
[11] Authenticated by the declaration of Harold M. Byrne (#127, Ex. F, ¶ 23).
[12] Authenticated by the declaration of Harold M. Byrne (#127, Ex. F, ¶ 24).
[13] Authenticated by the declaration of Harold M. Byrne (#127, Ex. F, ¶ 24).
[14] Authenticated by the declaration of Harold M. Byrne (#127, Ex. F, ¶ 25).
[15] Authenticated by the declaration of Harold M. Byrne (#127, Ex. F, ¶ 26).
[16] Authenticated by the declaration of Harold M. Byrne (#127, Ex. F, ¶ 26).
[17] Authenticated by the declaration of Adam Watson (#127, Ex. I, ¶ 16).
[18] Authenticated by the declaration of Adam Watson (#127, Ex. I, ¶ 17).

11. the declaration of Adam Watson (#127, Ex. I);
12. NDOC Administrative Regulation ("AR") 740 governing the Inmate Grievance Procedure, effective February 12, 2010, and superseded versions dated November 23, 2009 and January 5, 2004 (#127, Ex. J);[19]
13. ESP OP 711 governing Segregation Unit Operations, effective July 30, 2011, and superseded versions dated November 23, 2009 and October 30, 2008 (#127, Ex. K);[20]
14. NDOC AR 733 governing Disciplinary Segregation, effective August 23, 2010, and superseded versions dated February 12, 2010, November 23, 2009 and March 25, 1994 (#127, Ex. L);[21]
15. plaintiff's April 12, 2001, Request for HRP Removal (#127, Ex. M);[22]
16. plaintiff's March 22, 2001, Inmate Interview Request (#127, Ex. N);[23]
17. AWP Engel's April 19, 2001, memorandum removing plaintiff's HRP classification (#127, Ex. O);[24] and
18. one of plaintiff's inmate grievances from August 22, 1996 (#127, Ex. P).[25]

Plaintiff opposes defendants' motion, arguing generally that defendants have failed to provide him with due process in his periodic classification reviews (#129, p. 2). Specifically, plaintiff contends that defendants never provided him with written notice that he would be "classified on indefinite Administrative Segregation/HRP Segregation status," and that defendants never provided him with written findings justifying his HRP classification. *Id.* at 2, 9, 22. Plaintiff also contends that defendants have insufficient reasons for classifying plaintiff as an HRP inmate, as the evidence defendants relied upon to justify plaintiff's HRP status throughout the entire classification process is false or "dubious. *Id.* at 22-24. Finally, plaintiff claims that defendants have not disclosed their sources for much of this evidence, particularly as it relates to plaintiff's alleged gang affiliations. *Id.* at 5-7, 15-16, 24.

The court notes that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any

---

[19] Authenticated by the declaration of Maxcine S. Blackwell (#127, ¶ 4).
[20] Authenticated by the declaration of Adam Watson (#127, Ex. I, ¶ 18).
[21] Authenticated by the declaration of Maxcine S. Blackwell (#127, ¶ 5).
[22] Authenticated by the declaration of Harold M. Byrne (#127, Ex. F, ¶ 27).
[23] Authenticated by the declaration of Harold M. Byrne (#127, Ex. F, ¶ 28).
[24] Authenticated by the declaration of Harold M. Byrne (#127, Ex. F, ¶ 29).
[25] Authenticated by the declaration of Harold M. Byrne (#127, Ex. F, ¶ 30).

doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.  LAW & ANALYSIS

### A.  RELEVANT LAW

#### 1.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999). Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

#### 2.  Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence

>regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B. ANALYSIS**

Defendants assert that plaintiff's due process claim related to his HRP classification is barred by the statute of limitations (#127, pp. 6-11). Defendants also assert that even if the court finds that

plaintiff's due process claim is not barred by the statute of limitations, there is no evidence that defendants violated plaintiff's due process rights. *Id.* at 11-17.

### 1. Due Process

Plaintiff generally alleges that defendants failed to provide him with proper due process in his periodic HRP classification reviews (#129, p. 2). Specifically, plaintiff alleges that defendants never provided him with written notice that he would be "classified on indefinite Administrative Segregation/HRP Segregation status," and never provided him with written findings justifying his HRP classification. *Id.* at 2, 9, 22. Plaintiff also alleges that defendants have insufficient reasons for classifying him as an HRP inmate, as the evidence defendants relied upon to justify plaintiff's HRP status throughout the entire classification process is "dubious." *Id.* at 22-24. Finally, plaintiff alleges that defendants have not disclosed their sources for much of this evidence, particularly as it relates to plaintiff's alleged prior gang affiliations. *Id.* at 5-7, 15-16, 24.

Plaintiff states that because he is classified as an HRP inmate, he is deprived of tier group and daily exercise, one daily phone call, one daily shower, unrestricted movement within the CMU, contact visits, less-restrictive canteen privileges, and social and environmental stimulation. *Id.* at 24.

Defendants assert that plaintiff's HRP classification was not arbitrary, but was based on the standards and procedures set forth in OP 434 and OP 501—which comport with due process (#127, pp. 13-14). Defendants contend that there is no evidence that they violated plaintiff's due process rights at any of his FCC review hearings. Defendants argue that they provided plaintiff with notice of every FCC review hearing, conducted the FCC review hearings in plaintiff's presence, and allowed plaintiff the opportunity to discuss his HRP classification with the decision-makers. Defendants also argue that they informed plaintiff why he was repeatedly classified as an HRP inmate (plaintiff's assault on another inmate, his failure to remain disciplinary-free and his refusal to

take responsibility for his actions).  Finally, defendants argue that they provided plaintiff with the opportunity to challenge the FCC's classification decision through the grievance process, and periodically reviewed plaintiff's HRP status.  *Id.* at 15-16.

Under the Due Process Clause of the Fourteenth Amendment, "[p]risoners . . . may not be deprived of life, liberty, or property without due process of law."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  A valid due process claim has three prerequisites: (1) the deprivation, (2) of a liberty or property interest, (3) by officials acting under color of state law.  *Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981).  To prevail on a claim of deprivation of liberty without due process of law, a plaintiff must first establish the existence of a protected liberty interest.  After meeting this threshold requirement, the plaintiff must then demonstrate that the defendants failed to provide the process due.  *See Wolff*, 418 U.S. at 556-57; *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

Liberty interests may arise from the Due Process Clause itself or from state law.  *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).  The Due Process Clause does not confer a liberty interest in freedom from state action taken "within the normal limits or range of custody which the conviction has authorized the State to impose."  *Sandin*, 515 U.S. at 478 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).  Thus, the Supreme Court has found that the Due Process Clause does not afford prisoners a liberty interest in being free from intrastate prison transfers, *Meachum*, 427 U.S. at 225, or in remaining in the general prison population.  *Hewitt*, 459 U.S. at 468; *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) ("administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence.").

However, in certain circumstances, states may create liberty interests protected by the Due Process Clause.  *Sandin*, 515 U.S. at 483-84.  For example, in *Sandin*, the Court found that a liberty

-11-

interest in avoiding transfer to particular conditions of confinement may arise from state prison regulations if the transfer "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005).

Once a protected liberty interest is found, the court must determine what process is due under the Fourteenth Amendment, and whether the defendants have provided the process due. *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1984). When an inmate is placed in segregated housing, prison officials need only provide an informal, non-adversary review of the evidence justifying the decision to segregate the inmate. *Hewitt*, 459 U.S. at 476. Unlike a disciplinary proceeding, the inmate is not entitled to a "detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472. Instead, the inmate must merely receive some notice of the charges against him within a reasonable time following the inmate's transfer, and an opportunity to present his views to the prison official tasked with making the segregation decision. *Hewitt*, 459 U.S. at 476, n. 8. After being placed in segregation, prison officials must periodically review the initial placement. *Id.* at 477, n. 9.

When an inmate faces disciplinary charges, on the other hand, prison officials must provide the inmate with the following: (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges and a description of the evidence against the prisoner; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would be unduly harmful to institutional security or correctional goals; (3) legal assistance where the charges are complex or the inmate is illiterate; and (4) a written statement by the factfinders detailing

the evidence relied upon and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-70. Plaintiff does not take issue with any of his disciplinary proceedings; instead, he focuses on his HRP classification and placement in solitary confinement. Thus, the procedural protections outlined in *Wolff* do not apply to plaintiff's claim.

Defendants do not dispute that plaintiff has a protected liberty interest in his HRP classification, and the court need not address this issue. However, the parties do dispute whether plaintiff was afforded proper due process with respect to his HRP classification.

First, plaintiff alleges that defendants violated his due process rights because they never provided plaintiff with written notice that he would be "classified on indefinite Administrative Segregation/HRP Segregation status" (#129, pp. 2, 9, 22). Although the court recognizes that an inmate has a liberty interest in avoiding assignment to an indefinite term of restricted confinement, *see Wilkinson*, 545 U.S. at 224, here, there is no indication that plaintiff is subject to "indefinite" HRP classification. In fact, plaintiff was removed from HRP classification on April 17, 2001 (#127, Ex. F, ¶ 10; #127, Ex. O). Plaintiff was approved for CMU yard and tier privileges on May 23, 2002. Only one week later, plaintiff assaulted another inmate and was appropriately re-classified as an HRP inmate (#127, Ex. F, ¶ 12; #127, Ex. E, p. 001). Plaintiff's contention that defendants should have provided him with written notice of "indefinite Administrative Segregation/HRP Segregation status" has no merit.

Second, plaintiff alleges that defendants violated his due process rights because they never provided plaintiff with written findings justifying his HRP classification (#129, pp. 2, 9). However, plaintiff is not entitled to the procedural protections outlined in *Wolff*. Unlike a disciplinary proceeding, when an inmate is placed in segregated housing (or in this case, subject to HRP classification), the inmate is not entitled to a "written decision describing the reasons for placing the

prisoner in administrative segregation." *Toussaint*, 801 F.2d at 1101.  Plaintiff's contention that the FCC panel should have provided plaintiff with written justifications for their HRP classification decision is not supported by applicable case law.

Third, plaintiff alleges that defendants violated his due process rights because they relied upon insufficient and "dubious" evidence to justify plaintiff's HRP classification throughout the entire classification and review process (#129, pp. 22-24).  The court disagrees.  OP 434 states that in making an HRP classification decision, the FCC will consider whether the inmate has engaged in assaultive behavior towards correctional staff or other inmates; whether the inmate has escaped or attempted to escape in the past; whether the inmate is sentenced to death; and whether the inmate requires any special security concerns (#127, Ex. I, ¶ 7; #127, Ex. G, p. 001).

Plaintiff was initially classified as an HRP inmate due to the severity of his crime, his identification as a high profile gang leader, and his behavior while housed at CCDC (#127, Ex. F, ¶ 8).  Since plaintiff's arrival at ESP, he has committed numerous disciplinary infractions, despite a presumptively lessened opportunity to engage in poor behavior due to his HRP status.  For example, plaintiff's NDOC Disciplinary History Report reveals that plaintiff was found guilty of the following:

1. 1998:  assault and possession of contraband;
2. 1998:  misuse of supplies;
3. 1999:  tampering with a locking device and possession of contraband;
4. 2000:  organizing a work stoppage/demonstration, abusive language, delaying/hindering/interfering with staff, interfering with count, and disobedience;
5. 2000:  possession of gang material, failure to follow rules and regulations, unauthorized property under $50, and property damage less than $50;
6. 2002:  mayhem, battery, assault, possession of contraband, and organizing a work stoppage/demonstration;
7. 2003:  threats;
8. 2003:  possession of contraband and gambling;
9. 2008:  unauthorized property under $50; and
10. 2010:  delaying/hindering/interfering with staff.

-14-

(#127, Ex. D).  Further, when plaintiff was removed from HRP status and given CMU yard and tier privileges, within a week, plaintiff assaulted another inmate with a weapon.

Given plaintiff's status as a death row inmate, his significant disciplinary history, and the fact that plaintiff assaulted another inmate the only time he was removed from HRP status, the court finds that the FCC's decision to continue plaintiff's HRP classification was not arbitrary, but was supported by sufficient evidence in the record.

Finally, plaintiff alleges that defendants violated his due process rights because they never disclosed their sources for much of the evidence used to justify plaintiff's HRP classification, particularly the sources related to plaintiff's alleged gang affiliations (#129, pp. 5-7, 15-16, 24).  However, "due process does not require disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation." *Toussaint*, 801 F.2d at 1101.  The court finds that defendants' failure to provide plaintiff with this discovery does not violate due process.

The court finds no evidence that defendants have violated plaintiff's due process rights, either in initially classifying plaintiff as an HRP inmate, re-classifying plaintiff as an HRP inmate, or continuing to classify plaintiff as an HRP inmate.  Plaintiff has received adequate procedural protections with respect to his HRP classification.  Plaintiff has met with the FCC to review his HRP status a total of twenty-one times since he was incarcerated at ESP (#127, Ex. F, ¶¶ 9, 13-14; #127, Ex. M).  Plaintiff has not alleged that he received insufficient notice of any of the FCC review hearings; and in any event, the court notes that advance written notice is not required.  *See Greenholtz*, 442 U.S. at 14, n. 6.  The record indicates that plaintiff met with the FCC at each scheduled hearing, and he had the opportunity to present his views (#127, Ex. A).  The record also

indicates that the FCC informed plaintiff of its reasons for continuing to classify plaintiff as an HRP inmate and also discussed the steps plaintiff needs to take to be removed from HRP status. *Id.*

Plaintiff has produced no evidence establishing any procedural deficiencies with respect to the HRP classification process or plaintiff's particular FCC review hearings. In addition, as noted above, there is no evidence that the FCC continues to arbitrarily deny plaintiff's requests for HRP removal. Instead, there is ample evidence supporting the FCC's continued decision to classify plaintiff as an HRP inmate. Further, the court notes that classification decisions regarding prison safety and security are entitled to the court's deference. *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979); *Wright v. Rushen*, 642 F.2d 1129, 1132 (9th Cir. 1981) (noting that "courts should avoid enmeshing themselves in the minutiae of prison operations in the name of the Constitution.") (citations omitted)). Accordingly, the court finds that plaintiff has been afforded the due process to which he is entitled.[26]

### III. CONCLUSION

Based on the foregoing, and for good cause appearing, the court concludes that there are no genuine issues for trial as to plaintiff's due process claims related to his HRP classification. Accordingly, the court recommends that defendants' supplementary motion for summary judgment (#127) be **GRANTED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and

---

[26] As the court finds that defendants have not violated plaintiff's Fourteenth Amendment due process rights, it is unnecessary for the court to reach defendants' statute of limitations argument.

authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' supplementary motion for summary judgment (#127) be **GRANTED**.

**DATED:  June 11, 2013.**

_____
**UNITED STATES MAGISTRATE JUDGE**